UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ALEJANDRO ARROYO,

                Plaintiff,

v.                                                  Case No. 17-cv-1561-pp

TIMOTHY LINDQUIST, WALLY BUMPS,
WISCONSIN RESOURCE CENTER, and
JOHN AND JANE DOES,

                Defendants.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE
FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION TO
APPOINT COUNSEL (DKT. NO. 12) AND SCREENING THE COMPLAINT**

---

       The plaintiff, who is representing himself, is a Wisconsin State inmate. He filed this lawsuit under 42 U.S.C. §1983, dkt. no. 1; he also filed a motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, and a motion to appoint counsel, dkt. no. 12. This order resolves the plaintiff's motions and screens his complaint.

**I.    Motion for Leave to Proceed without Prepayment of the Filing Fee**

       The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was in custody when he filed his complaint. 28 U.S.C. §1915. The PLRA allows an incarcerated plaintiff to proceed with his lawsuit without prepaying the case filing fee, if he meets certain conditions. One of those conditions is that he pay an initial partial filing fee. 28 U.S.C. §1915(b). On December 7, 2017, the court ordered the plaintiff to pay an initial partial filing

1

fee of $9.38. Dkt. No. 9. The court received a payment of $50 toward the filing fee on December 21, 2018. The court will grant the plaintiff's motion to proceed without prepayment of the full case filing fee, and will allow him to pay the remainder of the fee over time in the manner explained at the end of this order.

## II. Screening of the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) that person was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se*

plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A. The Plaintiff's Allegations

The plaintiff has sued John and Jane Does, Timothy Lindquist and Captain Wally Bumps. Dkt. No. 1 at 1.

The plaintiff alleges that in August 2016, he was placed in observation status at the Wisconsin Resource Center (he does not say who placed him there). Dkt. No. 1 at 2. He states that, about a week later, he started hallucinating and hitting his head against the concrete floor. Id. About an hour after he started banging his head, a captain (the plaintiff does not identify the captain by name) came to his door and asked if he was okay. Id. The plaintiff states that he did not acknowledge the captain, but kept hitting his head against the floor; the plaintiff explains that his forehead was bleeding. Id. The plaintiff asserts that the captain did not order anyone to secure the plaintiff or place him in restraints. Id. at 2-3.

Later, the plaintiff began to commit self-harm by attempting to remove his left eye from its socket with his fingers. Id. The plaintiff states that John Doe staff members initially laughed and made jokes, telling the plaintiff that he couldn't remove his eye and he looked like a fool. Id. The plaintiff states, however, that he actually removed the eye; he says that that is when staff began to react. Id. The plaintiff says that it was not until hours later that the plaintiff received medical attention. Id. The plaintiff says is no longer able to

see out of the left eye. Id.

The plaintiff asserts that he was hallucinating and having a "psycho-affective episode," and that the defendants did not protect him from himself. Id. He seeks punitive and compensatory damages. Id. at 4.

B.   The Court's Analysis

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). Deliberate indifference has both an objective element (that the medical needs be sufficiently serious) and a subjective element (that the officials act with a sufficiently culpable state of mind). Id.

The court accepts the plaintiff's allegations that he suffered a severe psychotic episode. The plaintiff also has alleged that someone—the captain who observed him banging his head against the concrete, the staff members who saw him trying to gouge out his eye—knew that he was having such an episode, but did not react to help him. The court concludes that the plaintiff has alleged sufficient facts to allow him to proceed on deliberate indifference claims against the John Doe defendants (the captain who saw him banging his head, and the WRC staff members who saw him trying to harm himself and laughed/did nothing), based on his allegations that they failed to keep him from injuring himself.

The court will not allow the plaintiff to proceed against Timothy Lindquist. Timothy Lindquist is the director of the Wisconsin Resource Center.

4

The plaintiff has not alleged that Lindquist had any part in the events that took place in August 2016. The court suspects that the plaintiff sued Lindquist in his role as a supervisor. In order for a supervisor to be liable under §1983, that person must be "personally responsible for the deprivation of the constitutional right." Matthews v. City of E. St. Louis, 675 F.3d 703, 708 (7th Cir. 2012) (quoting Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001)). "To show personal involvement, the supervisor must 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" Id. (quoting Jones v. City of Chi., 856 F.2d 985, 992-93 (7th Cir. 1988)). The plaintiff has not alleged that Lindquist knew about what happened in August 2016, or that he facilitated, approved or condoned it. The court will dismiss him as a defendant.

The plaintiff also names Captain Wally Bumps in the caption of his complaint as a defendant. But he does not mention Bumps anywhere in the body of the complaint. He does not explain what, if any, role Bumps played in the events of August 2016. Perhaps Bumps was the captain who saw the plaintiff banging his head against the concrete floor, but the plaintiff doesn't say so. Perhaps Bumps was one of the staff members who saw the plaintiff trying to pull his eye out, and didn't try to stop him, but the plaintiff doesn't say so. The court will dismiss Bumps as a defendant, because the plaintiff did not make any specific allegations against him.

Finally, the court can't tell whether the plaintiff meant to name the WRC as a defendant, or whether he was simply referring to the fact that the

5

individual defendants worked at WRC. Assuming that the plaintiff meant to sue the WRC, the court will dismiss the WRC as a defendant. The WRC is part of the Wisconsin Department of Corrections, which is part of the State of Wisconsin. Section 1983 allows plaintiffs to sue "persons" who violate their constitutional rights under color of state law. None of those entities is a "person" for purposes of §1983. See Lapides v. Univ. of Ga., 535 U.S. 613, 617–18 (2002); Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989).

Because the court has allowed the plaintiff to proceed on claims against only unnamed defendants (John Does), the court will leave Timothy Lindquist, the director of the WRC, as a defendant for the limited purpose of helping the plaintiff identify the real names of the Doe defendants. See Donald v. Cook Cty. Sheriff's Dep't, 95 F.3d 548, 555 n.3 (7th Cir. 1996). The court will send a copy of the complaint and this order to Director Lindquist, and the court anticipates that a lawyer will "make an appearance"—tell the court that he is representing Director Lindquist. Once that lawyer "makes an appearance," the plaintiff may serve discovery (written questions, see Federal Rule of Civil Procedure 33, or requests for documents, see Rule 34) on the lawyer by mailing them to the lawyer at the address on the notice of appearance. The plaintiff must limit his questions to the topic of learning the real names of the Doe defendants, by asking things like the names of the people who were on duty in the plaintiff's wing at the time he injured himself. The plaintiff may not ask Lindquist questions about other topics, and Director Lindquist is not required to respond to questions that are not relevant to the topic of identifying the real names of

the Doe defendants. Director Lindquist does not have to answer or otherwise respond to the plaintiff's complaint.

After the plaintiff learns the real names of the Doe defendants, he must file a motion to substitute the real names for the Doe placeholders. The plaintiff must identify the real names of the Doe defendants by **September 28, 2018**, or explain to the court why he is unable to do so. If the court doesn't receive either of those things from the plaintiff by the end of the day on September 28, 2018, the court will dismiss the plaintiff's case based on his failure to diligently pursue it. After the plaintiff identifies the real names of the Doe defendants, the court will dismiss Director Lindquist as a defendant.

### III. Motion to Appoint Counsel

The plaintiff has asked the court to recruit a lawyer to represent him on a volunteer basis. Dkt. No. 12. He explains that he has written letters to many lawyers asking them to represent him, but that no one has responded. Id. The court may recruit a lawyer to represent a litigant who is unable to afford one in a civil case. Navejar v. Iyiola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). Before a court can appoint counsel to represent someone, however, the plaintiff must show that he has made "reasonable efforts" to hire a lawyer on his own. Even if the plaintiff has made such efforts, the court must consider whether the plaintiff is competent to pursue the case himself. Pruitt v. Mote, 503 F.3d 647, 654 (7th Cir. 2007) (citations omitted). In this district, a plaintiff may show that he has made reasonable efforts to hire an attorney on his own

by contacting at least three lawyers.

The plaintiff asserts that he has contacted many lawyers on his own, and that none have agreed to represent him. The court concludes, therefore, that he has met the first Pruitt requirement. Next, the court must evaluate "whether the difficulty of the case—factually and legally—exceeds [his] capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d 655). This evaluation focuses on the plaintiff's ability to prosecute his case, including his ability to handle all the "tasks that normally attend litigation" such as "evidence gathering" and "preparing and responding to motions." Id. The demand for volunteer lawyers is high (nearly every prisoner plaintiff asks for one), and the supply is low. There simply are not enough lawyers willing or able to volunteer their time. As a result, the court must analyze each plaintiff's circumstances before determining whether it will recruit a lawyer to represent a plaintiff.

Based on the plaintiff's communications with the court, the court believes that he can represent himself at this stage of the case. The plaintiff's allegations are not complicated—he alleges that staff watched him while he hurt himself, but did nothing to help him. The plaintiff has clearly communicated what happened, and how it affected him. The next step in the process is for Director Lindquist's lawyer to file an appearance, and then for the plaintiff to ask that lawyer questions such as who was on duty in the cell block at the time the plaintiff was banging his head/injuring his eye. If, as the case goes along, it becomes too complex for the plaintiff to handle on his own,

8

he can again ask the court to appoint a lawyer to represent him.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES without prejudice** the plaintiff's motion to appoint counsel. Dkt. No. 12.

The court **ORDERS** that defendants Wally Bumps and the WRC are **DISMISSED**.

The court further **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent to the Wisconsin Department of Justice for service on Timothy Lindquist. Counsel for Director Lindquist should file an appearance in this case; however, Director Lindquist does not have to respond to the plaintiff's complaint.

The court **ORDERS** that the plaintiff may use discovery to learn the real names of the Doe defendants. He should mail his discovery requests to Director Lindquist's lawyer, after the lawyer files an appearance.

The court **ORDERS** the plaintiff to file a motion to substitute the real names for the Doe placeholders (or explain to the court why he is unable to do so) in time for the court to receive it by the end of the day on **September 28, 2018**. If the plaintiff does not file a motion substituting the real names of the Doe defendants (or explain why he is unable to do so) in time for the court to receive it by September 28, 2018, the court may dismiss plaintiff's case based

on his failure to diligently prosecute it.

The court **ORDERS** the agency having custody of the plaintiff to collect from his institution trust account the $300 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff is transferred to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will mail a copy of this order to the officer in charge of the Wisconsin Resource Center.

The court **ORDERS** the plaintiff to send all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case. Because each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff does not have to mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff

should keep a personal copy of each document he files with the court.

The court advises the plaintiff that if he doesn't file documents or take other court-ordered actions by the deadlines the court sets, the court may dismiss his case for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 31st day of July, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**